# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **07-80241**

CIV-HURLEY

V.HOPKINS

DOLPHIN, LLC, a Florida
Limited Liability Company

       Plaintiff,

v.

WCI COMMUNITIES, INC., a
Delaware Corporation

       Defendants.

_____/

FILED BY

2007 MAR 14 PM 1:50

## COMPLAINT

Plaintiff,  DOLPHIN, LLC, a Florida limited liability company ("Plaintiff or Buyer"), sues Defendant,  WCI COMMUNITIES, INC., a Delaware corporation ("WCI"), and states:

## JURISDICTION AND VENUE

1.    This is an action arising under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. Sections 1701-20 ("ILSA"), and jurisdiction is apppropriate under 28 U.S.C. Section 1331. Plaintiff also asserts a pendent state law claim for an Unfair Trade Practice under Chapter 501, Fla. Statutes.

2.    Defendant, a Delaware corporation, is subject to the jurisdiction of this Court pursuant to section 48.193(1)(a), Fla. Stat., and Section 48.193(2) Fla. Stat., because it engages in substantial business activities in Florida, including, but not limited

RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

to, the contract for the sale of realty that is the subject of this action. Its principal place of business is in Bonita Springs, Florida.

3.     Venue is proper with this Court because the property that is the subject of this action is situated in Palm Beach County, Florida, and the contract between the parties that is the subject of this action was executed and was to be performed in the Southern District of Florida.

4.     Plaintiff is a Florida limited liability company that maintains its principal place of business in McLean, Virginia.

## COMMON ALLEGATIONS TO ALL COUNTS

5.     On September 7, 2004, the parties entered into a Purchase Agreement whereby the Plaintiff agreed to purchase from the Defendant a Condominium Unit to be built at 2655 North Ocean Boulevard, Singer Island, in Palm Beach County, Florida. A true and correct copy of the contract and addendums thereto are attached and incorporated by reference as Exhibit "A.

6.     In connection with the purchase, Plaintiff deposited with the Defendant $560,000.00, representing twenty percent (20%) of the contract price.

7.     The plaintiff has demanded the return of the deposit from WCI, and WCI has not done so.

8     This contract between the parties was executed by the purchaser on August 3, 2004.

9.     The contract contains no promise setting forth a date by which the unit was to be completed but an estimate of December 15, 2005 is provided.

2

10.   A property report[1] as set forth by ILSA for  was not provided to the Plaintiff by WCI.

11.   The Plaintiff has retained the undersigned and is obligated to pay for services rendered in pursuit of this claim.

12.   All conditions precedent to the filing and/or maintenance of this action have been performed or have been waived.

13.   The One Singer Island condominium project is divided into residential units, garages, storage units, cabanas and parking spaces each of which is limited to the exclusive use of its respective owner.

14.   The property at issue was marketed under a common promotional plan with other WCI properties, including but not limited to to the Old Palm Golf Club located in Palm Beach Gardens, Florida and The Resort On Singer Island (See Exhibit "A," at ¶ 31(B).

15.   Cumulatively there are more than 100 lots[2] in the One Singer Island project together with the lots in either the Resort On Singer Island or The Old Palm Golf Club.

---

[1] § 1707. Property report: (a) Contents of report. A property report relating to the lots in a subdivision shall contain such of the information contained in the statement of record, and any amendments thereto, as the Secretary may deem necessary, but need not include the documents referred to in paragraphs (7) to (11), inclusive, of section 1406 [15 USCS § 1705(7) to (11)]. A property report shall also contain such other information as the Secretary may by rules or regulations require as being necessary or appropriate in the public interest or for the protection of purchasers.

[2] Condominiums or unit properties are "lots" within meaning of Interstate Land Sales Full Disclosure Act. *Schatz v Jockey Club Phase III, Ltd.* 604 F Supp 537 (SD Fla 1985). See also ILSA § 1701. The Secretary of Housing and Urban Development (HUD) has defined "lot" as "any portion, piece, division, unit, or undivided interest in land located in any state or foreign county if the interest includes the right to the exclusive use of a specific portion of the land." *24 C.F.R. § 1710.1 (1987).* Parking Spaces as well as other portions of land which are subject to the exlusive use of the owner hve also counted as "lots" for the purposes of ILSA. *Giralt v. Vail Village Inn Associates,* 701 P.2d 801, 808 (Colo. App 1988).

3

16.     The individuals authorized to sell condominiums etc., for the One Singer Island condominium project were also authorized to sell units at The Resort On Singer Island condominium project.

17.     WCI made misleading representations to the buyers in including the fact that it was charging the buyer the minimum rate promulgated by the Florida Department of insurance for an owner's title insurance policy.

18.     The rates promulgated by the Florida Department of insurance are not the minimum amount which can be charged for an owner's title insurance policy.

19.     A prospective purchaser could have obtained a rate less than the amount promulgated by the Florida Department of Insurance with a title company not affilaited with WCI by receiving a rebate of a of the title agent's portion of the risk premium.

20.     The statement made by WCI misleads the buyer into believing that the rate charged by their affiliated business is the bare minimum available charged by all title companies.

## COUNT I – VIOLATION OF INTERSTATE LAND SALES FULL DISCLOSURE ACT

21.     Plaintiff incorporates the allegations of the above-paragraphs 1-20 into this Count by reference.

22.     The subject transaction is not exmpt from ILSA as it does not meet any of the folowing criteria under under §1702 of ILSA:

    a.     The subject property was not a sale of a lot(s) with completed improvements on it or a promise to complete improvements within two (2) years of the date the agreement was signed.

4

b.      The subject property was not a sale of a lot in a subdivision[3] containing less than twenty five (25) lots.

c.      The subject property was not the sale of evidence of indebtedness secured by a mortgage.

d.      The subject property was not the sale of a security in a real estate investment trust.

e.      The subject property was not a the sale of Real Estate by a governmental agency.

f.      The subject property was not a the sale or lease of cemetary lot(s).

g.      The subject property was not a sale or lease of a lot(s) to any person who aquires such lots for the purpose of engageing in the business of constructing a building(s) or for the pupose of resale or lease of such lot(s) to persons engaged in such business.  The sale or lease of real estate which is zoned for, or restricted by covenant to, industrial or commercial use.

23.     Defendant is a developer[4] under ILSA.

24.     ILSA was intended to protect the public and as such should be liberally construed in favor of the Plaintiff.

25.     The parties' purchase agreement is not exempt from ILSA.

26.     The contract does not contain provisions setting forth terms consistent with those set forth by Sections 1703 (d) of ILSA.

---

[3] § 1701"subdivision" means any land which is located in any State or in a foreign country and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan;
[4] § 1701(5) "developer" means any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision;

5

27.    The contract does not contain a provision setting forth terms consistent with those set forth by Section 1703 (c) of ILSA.

28.    The statements made by WCI as to the "minimum" promulgated rate for an owner's title insurance policy violate ILSA, in that the statements were misleading and constitute an untrue statement of material fact.

29.    WCI has violated the applicable provisions of ILSA, and the Plaintiff is entiled to revoke the subject sales agreement and receive the return of their deposit.

30.    Pursuant to ILSAt the court may award the prevailing party attorney fees.

**WHEREFORE**, Plaintiff demands judgment for rescission of the parties' contract, a return of his deposit, and the payment of interest, costs and attorney fees of this action together with all other relief the court deems just and proper.

## COUNT II – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT("FDUPTA")

31.    Plaintiff incorporates the allegations of the above-paragraphs 1-20 into this Count by reference.

32.    Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act, ("FDUPTA") is to be liberally construed to protect the consuming public, such as the Plaintiff in the case sub judice, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

33.    The sale of a condominium is within FDUPTA after the 1993 amendment.

RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

34.    Defendant's acts of entering into a sales contract and seizing the Plaintiff's deposit in connection with said contract constitute an unfair and/or deceptive trade practice.

35.    The federal courts have defined a deceptive trade practice to be any act or practice that has the tendency or capacity to deceive consumers and an unfair trade practice to be any act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

36.    Here WCI's practice of giving no promise of a completion date and seizing the Plaintiff's deposit constitutes a violation of FDUPTA.

37.    The estimate for completion of the condominium by December 15, 2005, is likely to decieve the consumer as it is illusory.

38.    Further, the subsequent delay and ultimate loss of the deposit have damaged the Plaintiff.

39.    In addition, the statement made by WCI as to the owner's title policy misleads the buyer into believing that the rate charged by their affiliated business is the bare minimum allowable by law, and therefore is a violation of FDUPTA.

40.    In accordance with Section 501.2105(1), Fla. Stat., Plaintiff is entitled to recover his fees from the Defendant.

**WHEREFORE,** Plaintiff demands judgment for rescission of the parties' contract, a return of his deposit, and the payment of interest, costs and attorney fees of this action  together with all other relief the court deems just and proper, **or** a civil penalty as set forth in FDUPTA.

7

**RYAN & RYAN ATTORNEYS, P.A.**
Attorney for the Plaintiff
631 U.S. Highway One, Suite 100
North Palm Beach, FL 33408
(561) 841-3420
(561) 841-3424 fax

By: _____

      JAMES D. RYAN
      Florida Bar no. 976751
      *jdr@attyryans.com*
      TIMOTHY P. O'NEILL
      Florida Bar no. 0130877
      *tpo@attyryans.com*

ONE SINGER ISLAND, A CONDOMINIUM

RESIDENCE PURCHASE CONTRACT

Purchaser(s) _Dolphin, LLC_____

Residence (Unit) # _602_____

Purchaser SS#/FEI# _029·30·3689_ and _54·1907187_____

Purchaser Address: _662 Live Oak Dr. McLean VA 2210_

Purchaser Phone:(Home) _703·623·3812_ FAX: _____
(Local) _____

THIS RESIDENCE PURCHASE CONTRACT (this "Contract") is made and entered into as of the "Effective Date," as such term is defined in Section 25.V, below, by and between (i) WCI COMMUNITIES, INC., a Delaware corporation, whose address is 24301 Walden Center Drive, Bonita Springs, Florida 34134, and whose telephone number is (239) 947-2600 (referred to herein as "Developer" and/or "Seller"), and (ii) the above named person(s) (singularly and collectively, and jointly and severally referred to herein as "Purchaser").

WITNESSETH:

FOR AND IN CONSIDERATION of the mutual covenants, conditions and restrictions, contained in this Contract, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller has agreed to sell and Purchaser has agreed to purchase, upon the following terms and conditions, condominium unit # _602_ (the "Unit"), in One Singer Island, a Condominium (the "Condominium"), a condominium to be created pursuant to that certain Declaration of Condominium of One Singer Island, a Condominium, to be recorded in the Public Records of Palm Beach County, Florida, as the same may be amended from time to time (collectively, the "Condominium Declaration") for the total purchase price set forth in Section 1 below.

**ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.**

**ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.**

1.    TOTAL PURCHASE PRICE:                                    $_2,800.000_

The total purchase price is payable in U.S. Dollars as follows:

A.    $ _____    Reservation deposit, if applicable, (the "Reservation Deposit");

B.    $_280,000_    Deposit (which, together with the Reservation Deposit, shall equal 10% of the Total Purchase Price) shall be due within fifteen days after execution of the Contract by Purchaser (the "Initial Deposit");

C.    $_280,000_    Deposit equal to an additional 10% of the Total Purchase Price due within seven (7) days of commencement of construction which is defined as the date a Notice of Commencement is recorded in the public records of Palm Beach County, Florida (the "Second Deposit"; the Reservation Deposit, the Initial Deposit and the Second Deposit are sometimes referred to herein collectively as the "Deposits");

D.    $_2240.000_    The balance of the Total Purchase Price at the "Closing," as such term is defined in Section 3 hereof, by cash or wire transfer of funds (subject to adjustments and prorations as hereinafter set forth). Purchaser is responsible for payment of all fees associated with the wire transfer of any funds.

All checks for Deposits shall be made payable to CHICAGO TITLE INSURANCE COMPANY (or such other title insurance company as Seller may designate from time to time), but shall be mailed or delivered to WCI Realty, Inc., 3800 North Ocean Drive, Singer Island, Florida 33404, Fax: (561) 840-6437. Checks for Deposits are accepted subject to collection.

1


PLAINTIFF'S EXHIBIT

A

ALL-STATE LEGAL®

In addition to the Total Purchase Price, Purchaser shall also be required to pay the amounts described in <u>Section 4</u> below and the amounts referenced on the Real Property Disclosure Statement attached hereto as <u>Exhibit "A"</u> and incorporated herein by this reference, including, but not limited to those amounts referenced in <u>Section 3</u> of such <u>Exhibit "A"</u> (the "Real Property Disclosure Statement") and on the Affiliated Business Arrangement Disclosure Statement Notice attached hereto as <u>Exhibit "C"</u> and incorporated herein by this reference (the "Affiliated Business Arrangement Disclosure Statement Notice").

Until such time as construction of the Condominium has been completed, Seller has retained Chicago Title Insurance Company, 5447 Nellie Davis Lane, Tampa, Florida 33634 (813-249-2468), to act as Escrow Agent (the "Escrow Agent") as required by Section 718.202, Florida Statutes. All notices and claims of Purchaser with respect to any and all of the Deposits shall be sent to the Escrow Agent at its address set forth above. Upon request, the Escrow Agent shall give Purchaser a receipt for each or all of the Deposits. Deposit(s) made by Purchaser hereunder shall be held in an interest bearing account but only in accordance with <u>Section 2</u> below. If Purchaser terminates this Contract prior to the expiration of the rescission period described in <u>Section 40</u> hereof, Seller shall direct the Escrow Agent to refund all Deposits to Purchaser. If Purchaser defaults hereunder, Seller shall be entitled to retain all Deposits, plus any and all accrued interest thereon, as more particularly described in <u>Section 7.B.</u> below. To the extent not previously disbursed by the Escrow Agent to Seller, Purchaser hereby authorizes and directs the Escrow Agent to disburse any and all Deposits to Seller at the Closing.

THIS CONTRACT IS NOT CONDITIONED UPON PURCHASER SECURING FINANCING.

2.     DEPOSITS, ALTERNATIVE ASSURANCES:

All deposits shall be held (subject to the right of Seller to provide "Alternative Assurances" as set forth below) and disbursed by the Escrow Agent pursuant to the terms of this Contract and the terms of an Escrow Agreement between Escrow Agent and Seller dated November 15, 2000, which Escrow Agreement is incorporated herein by reference. Purchaser may obtain a written receipt from the Escrow Agent for the deposits upon request. Deposits by Purchaser comprising the first ten percent (10%) of the aforestated Total Purchase Price for the Unit shall earn interest at the rate being paid by the depository institution on the accounts into which the funds are placed but only during the time that the deposit moneys are in such accounts. *At the time the deposit moneys, or any portion thereof, are withdrawn from such accounts, the deposit moneys or the portion thereof having been withdrawn from such account, shall immediately cease earning interest and Seller shall have no liability to pay Purchaser any interest on the deposit moneys or the portion thereof having been withdrawn from or after the date the deposit moneys are withdrawn from such accounts, or the date the portion has been withdrawn from such accounts.* Deposits will earn interest only after Purchaser's fifteen (15) statutory day rescission period has elapsed. The interest, if any, will be paid by separate check at the Closing or within fifteen (15) days following such Closing, at Seller's option. Deposits in excess of such ten percent (10%) may be used for construction purposes as provided by 718.202, Florida Statutes, and will not be earning interest on Purchaser's behalf. Seller has made or intends to make an "Alternative Assurances" filing with the Division of Florida Land Sales, Condominiums and Mobile Homes. This filing, upon approval, will permit Seller to substitute a Surety Bond for Purchaser's initial ten percent (10%) deposit moneys held by the Escrow Agent, withdraw such funds from the account maintained by the Escrow Agent into which such funds were deposited and maintained by the Escrow Agent, and to use such funds in accordance with applicable law.

3.     CLOSING AND POSSESSION DATE:

A.     The delivery and exchange of the balance of the Total Purchase Price and the documents contemplated herein to be delivered by each of Seller and Purchaser (the "Closing") will be at the location in Palm Beach County, Florida designated by Seller in written notification to Purchaser. At the election of Seller, the Closing may take place by mail. In the event the Closing Date or time described in this paragraph must be changed, Seller shall give Purchaser forty-eight (48) hours notification of such change.

B.     Seller will deliver possession of the Unit to Purchaser at the Closing.

C.     The Closing shall take place following substantial completion of the improvements constituting the Unit and common elements appurtenant thereto (as evidenced by the recording of a surveyor's certificate of substantial completion pursuant to Section 718.104(4)(e), Florida Statutes, and the issuance of a temporary certificate of occupancy or an unconditional certificate of occupancy for the improvements comprising the Condominium by the appropriate governmental authority). Seller shall deliver written notification of the date of the Closing to Purchaser not less than twenty (20) days prior to the date of the Closing.

D.     The estimated date of completing, constructing, finishing and equipping the Unit and common elements of the Condominium is December 15, 2005. This date is only an estimate and may be affected by weather, acts of God, availability of materials and other factors, known and not yet known.

2

E.     When all units to be built in the Condominium have been substantially completed, Seller shall record the survey and plot plan which will show the location of all items required by Section 718.104(4)(e), Florida Statutes, as amended.

F.     Seller, as to the Closing and documents to be delivered at the Closing, will have no obligation to any third parties (i.e., lenders or title insurance providers) and will be under no obligation to deal with any person or firm other than Purchaser and Purchaser's attorney.

4.     CLOSING COSTS, OTHER CHARGES AND PRORATIONS (OTHER THAN TITLE RELATED CHARGES):

A.     Seller shall furnish and pay for the survey contained in the Declaration and the documents pertaining to the operation of One Singer Island Condominium Association, Inc. (the "Condominium Association"), water and sewer connection charges, and the cost of recording Seller's partial release of mortgage, if any.

B.     Purchaser agrees to pay at the Closing (i) the recording fee for the "Deed," as such term is defined in Section 5.A. below, and for the certificate of approval, if any; (ii) documentary stamps for the Deed, (iii) any costs related to financing the purchase of the Unit, (iv) Purchaser's attorneys' fees, (v) One-time capital assessment of the Condominium Association for initial working capital applicable to the Unit in the amount of one month's assessment based on the assessment for each Unit type as indicated on the Operating Budget of the Condominium included in the "Condominium Documents," as such term is defined in Section 19 of the Contract, required by Section 718.504, Florida Statutes (2003), to be provided by Seller to Purchaser with respect to the Condominium, (vi) pro-rated monthly assessment of the Condominium Association applicable to the Unit (depending on the particular unit type as indicated on the Operating Budget for 2006), (vii) fifty percent (50%) of the settlement fees, (viii) ad valorem property taxes, subject to proration in accordance with Section 3 on Exhibit "A" attached hereto and incorporated herein by this reference, and (ix) such other applicable costs, not otherwise paid by Seller pursuant to this Contract, as are enumerated in (a) the Real Property Disclosure Statement attached hereto as Exhibit "A" and incorporated herein by this reference, and (b) the Affiliated Business Arrangement Disclosure Statement Notice attached hereto as Exhibit "C" and incorporated herein by this reference.

C.     Real property taxes, assessments and maintenance fees, including, but not limited to, those payable to the Condominium Association will be prorated as of the date of the Closing in accordance with Section 3 on Exhibit "A" attached hereto and incorporated herein by this reference.

5.     TITLE AND TITLE RELATED CHARGES:

A.     Purchaser will be given fee simple title to the Unit, but not to any limited common areas, by special warranty deed (the "Deed").  Title to the Unit will be subject only to the title exceptions set forth in Exhibit "B" attached hereto and incorporated herein by this reference (collectively, the "Permitted Exceptions"). A parking space, storage locker and wine storage locker will be assigned to Purchaser in the Deed pursuant to the provisions of the Declaration.

B.     Purchaser has the right to use an attorney or title company chosen by Purchaser in connection with the title-related aspects of the purchase of the Unit.  Purchaser may elect to use First Fidelity Title, Inc. ("FFT"), a Florida licensed title insurance agency affiliated with Seller.  If Purchaser elects to use FFT in connection with this transaction, then:

(1)     Seller shall pay for those title company charges traditionally borne by a seller in the county in which the Unit is located (i.e., title exam fee, fifty percent (50%) of the settlement fee and a $150.00 credit towards title costs), plus Seller shall also provide a $2,000.00 credit towards the title insurance premium to be paid by Purchaser at the Closing; and

(2)     Not less than twenty (20) days prior to the Closing, the Seller shall deliver to Purchaser or Purchaser's attorney a title insurance commitment (the "Commitment") issued by FFT agreeing to issue to Purchaser, upon recording of the Deed to Purchaser, an owner's policy of title insurance in the amount of the Total Purchase Price, insuring Purchaser's title to the Unit, subject only to the Permitted Exceptions, provided, however, the Commitment and related owner's policy of title insurance shall not insure Purchaser's interest in any limited common elements appurtenant to the Unit.  The title insurance shall be issued upon Chicago Title Insurance Company or another nationally recognized title insurer.

To elect to use FFT, Purchaser must check the appropriate box and initial the appropriate space immediately below. By doing so, Purchaser also acknowledges receipt of the Affiliated Business Arrangement Disclosure Statement Notice attached hereto as <u>Exhibit "C"</u> and incorporated herein by this reference. (PURCHASER IS TO SELECT ONE, BUT ONLY ONE, BOX AND INITIAL ONE, BUT ONLY ONE, SET OF INITIALS.)

| | Purchaser elects to use FFT | Purchaser's Initials _____ | _____ |
| □ | Purchaser elects <u>NOT</u> to use FFT | Purchaser's Initials _____ | _____ |

C.       Purchaser will have five (5) days from receipt of the Commitment for examination of the Commitment and of legal ingress and egress to the condominium property from a public right of way. If title or legal ingress or egress is properly found to be defective, Purchaser shall, within that time, notify Seller in writing specifying the defect(s). If the defect(s) render(s) title unmarketable, or Seller cannot deliver possession, or there is no legal ingress or egress in accordance with this Contract, the Closing may be postponed and Seller shall have ninety (90) days from the receipt of the notice of defect(s) within which to remove the defect(s), but Seller is not obligated to do so. If Seller cannot or will not correct the title defect(s) within said ninety (90) days, Purchaser shall elect one of the following two (2) options by written notice to Seller within ten (10) days after delivery of written demand by Seller:

(1)       Purchaser can accept possession of the Unit, and such title as Seller can provide, without reduction of the Total Purchase Price, waiving any claims against Seller because of the alleged title defect(s); or

(2)       Purchaser can cancel this Contract in full settlement of all claims against Seller resulting from this Contract, and receive a full refund of all Deposit(s) with such interest as may have been earned and would have been paid to Purchaser if Purchaser had closed the transaction contemplated by this Contract, whereupon both parties and the Escrow Agent shall be released from all obligations and liability hereunder.

D.       If Purchaser elects to use an attorney or a title company other than FFT in connection with the title-related aspects of the Unit, then:

(1)       Purchaser shall be solely responsible for all fees and charges payable to Purchaser's selected attorney and/or title company in connection with the title-related aspects of the purchase of the Unit, and (ii) Seller shall only pay for those title company charges traditionally borne by a seller in the county in which the Unit is located (i.e., title exam fee, fifty percent (50%) of the settlement fee and a $150.00 credit towards title costs). Further, in the event Purchaser elects to use an attorney or a title company chosen by Purchaser in connection with the purchase of the Unit other than FFT, Seller shall have no duty or obligation and is hereby released from any and all such duty and/or obligation, if any, to provide to such attorney or title company any document(s) whatsoever, including, but not limited to, any documentation regarding Seller's formation, existence and/or good standing, Seller's authority to convey the Unit or the authority of any person acting on Seller's behalf to execute and/or deliver documents on Seller's behalf; and

(2)       Not less than twenty (20) days prior to Closing, Purchaser shall deliver to Seller a copy of the Commitment issued by that attorney or title company agreeing to issue to the Purchaser, upon recording of the Deed to Purchaser, an Owner's policy to title insurance from a nationally recognized title insurer in the amount of the Total Purchase Price, insuring the Purchaser's title to the Unit, exclusive of any common elements appurtenant to the Unit, subject only to the Permitted Exceptions; and

(3)       The provisions of subsection E below of this <u>Section 5</u> shall apply.

E.       If Purchaser has checked the box and initialed the space electing to use FFT and Purchaser notifies Seller less than thirty (30) days prior to the Closing that Purchaser elects to have an owner's title insurance commitment and policy provided by an attorney or a title insurance agency other than FFT, Purchaser shall pay to FFT as agreed upon liquidated damages/cancellation fee an amount equal to FIVE HUNDRED and No/100 DOLLARS ($500.00) in consideration of administrative expenses incurred by FFT in connection with the preparation of the Commitment. Purchaser shall also indemnify and hold FFT harmless from and against any and all liabilities, claims, costs, losses and damages incurred by FFT in connection with the issuance of the Commitment by FFT, which indemnification shall survive the closing of the transaction contemplated herein.

6.       CONSTRUCTION:

Construction of the building in which the Unit is located, and construction of the Unit shall be substantially in accordance with the plans and specifications therefor which are available for review during normal business hours at Seller's sales office if an appointment is made at least twenty-four (24) hours before any such review. Seller may substitute materials and make changes in the plans and specifications, as Seller may

4

deem reasonably appropriate or as may be necessitated by material availability or construction requirements in the field, at any time prior to the recording of a surveyor's certificate certifying to the substantial completion of the building and establishing the building's "as built" location and dimensions. Seller agrees that such changes shall not substantially deviate from the original plans and specifications. Substituted materials will be of equal or better quality. Purchaser further acknowledges and agrees that, because of conditions that may be encountered in construction of the condominium building and improvements, the plans and specifications which are kept at the sales office may not be totally consistent with those plans and specifications which are on file with various governmental authorities, and Purchaser agrees that construction of the Condominium, and construction of the Unit need not be accomplished totally in accordance with the plans and specifications on file with applicable governmental authorities. The issuance of a certificate of occupancy by the appropriate governmental authority for the building or Unit shall be deemed conclusive evidence that such building or Unit was or were constructed in compliance with applicable building codes. Seller will build the Unit in a workmanlike manner.

7.    DEFAULT AND REMEDIES:

A.    If Purchaser fails to close this transaction in the time established for reasons other than Seller's default or delay, and Seller agrees to delay/extend the date of the Closing in accordance with this Section 7.A., Purchaser shall, if Seller is willing to close, be required to pay interest on the original Total Purchase Price at a rate equal to eighteen percent (18%) per annum from the date on which the Closing was originally scheduled to occur, to and including, the date on which the Closing actually occurs. Further, all prorations shall be made as of the date the Closing was originally scheduled. Nothing in this Contract, however, shall require Seller to delay/extend the date of the Closing beyond the time set forth in this Contract or prevent Seller from treating Purchaser as being in default if Purchaser fails to close within that time.

B.    If Purchaser fails to perform this Contract within the time specified (including payment of all deposits) or otherwise becomes in default under the terms and provisions hereof, the deposit(s) paid and agreed to be paid by Purchaser shall be retained by or for the account of Seller as liquidated damages and not as a penalty, consideration for the execution of this Contract and in full settlement of any claims whereupon Purchaser and Seller shall be relieved of all obligations under this Contract. Seller and Purchaser have agreed that Seller's actual damages in the event of default by Purchaser would be extremely difficult or impossible to determine. Therefore, by signing this Contract, the parties acknowledge that the deposit(s) paid and agreed to be paid by Purchaser, with all accrued interest thereon, is (are) agreed upon, after negotiation, as the parties' reasonable estimate of Seller's liquidated damages in the event of a breach of this Contract by Purchaser.

C.    If Seller defaults in the performance of this Contract, nothing contained herein shall be deemed to restrict Purchaser's remedies, if Purchaser shall be entitled to such remedies under applicable law, including the right to seek specific performance.

8.    ALTERATIONS:

Except as otherwise specifically provided or permitted herein, no Purchaser-initiated alterations, additions, omissions or deviations to or from the plans and specifications for the Unit shall be made unless agreed upon in writing by Purchaser, Seller and the general contractor and the cost thereof (including any and all related design costs) is paid directly to the general contractor by Purchaser in advance of the changes being made.

9.    ASSIGNMENT:

This Contract is not assignable by Purchaser, except to Purchaser's spouse, individually or jointly with Purchaser, Purchaser's family trust, existing or to be created and of which Purchaser or Purchaser's spouse is the primary beneficiary, or to any business entity organized under the laws of the State of Florida or any other state and authorized to do business in the State of Florida in which Purchaser or Purchaser's spouse owns at least a fifty-one percent (51%) controlling interest. A transfer or conveyance of such controlling interest may, at Seller's election, constitute a material breach of this Contract by Purchaser. In the event of any other assignment by Purchaser, Seller shall be under no obligation to complete the transaction contemplated hereby or any portion thereof with such assignee, but in fact may treat such action by Purchaser as a breach of this Contract. Seller, in Seller's sole and absolute discretion, may assign its rights under this Contract. If Purchaser dies or in any way loses control of Purchaser's affairs, this Contract will bind Purchaser's heirs and legal representatives. If Purchaser has received Seller's written consent to assign or transfer this Contract, then Purchaser's approved assignees shall be bound by the terms hereof.

10.    CONTINGENCIES:

If Seller has been unable to obtain purchase contracts for at least sixty-five percent (65%) of the units in the building constituting the Condominium or if Seller is unable for any reason to obtain all necessary permits for construction of the Condominium within one hundred eighty (180) days from the date the first purchaser signs a Residence Purchase Contract for a Unit in the Condominium, Seller may unilaterally terminate this Contract by delivery of written notice to Purchaser and, upon delivery of such notice and refunding to Purchaser all Deposits actually submitted by Purchaser in accordance with the terms of this Contract, including any and all accrued interest thereon, Seller shall have fulfilled all of Seller's obligations to Purchaser under this Contract and this Contract shall automatically be terminated and Purchaser, Seller and Escrow Agent shall be released from any and

5

legal\nmm\One Singer Island\residence purchase contract  v4
May 27, 2004

all duties, liabilities and obligations to the other hereunder. Nothing herein contained shall be construed or so operate in a manner inconsistent with 24 CFR §1710.5 and 61 F.R. 13601-13611, Supplemental Information to Part 1710; Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, Part IV(b), Paragraph 6.

11.    INSULATION:

A.    R-Values of installed (or to be installed) insulation:  (i) insulation over main roof slab will be either tapered styrofoam with an R-Value of R-20 and an average thickness of 4" or batt insulation with an R-Value of R-20 and an average thickness of 6"; and (ii) at exterior masonry walls a batt insulation having an average thickness of 1 ½" and an R-Value of R-6.

B.    Purchaser understands and acknowledges that insulation thickness may vary depending upon local conditions and construction factors, including, but not limited to, such items as wall openings and plumbing of other structures or obstructions within the walls which displace the insulation.  Purchaser understands and agrees that the foregoing information regarding the thickness and R-value of the insulation is based upon information supplied by the insulation installer, Seller makes no representation or warranty regarding same AND that Seller is not responsible for any errors or omissions made thereby.

12.    ENERGY PERFORMANCE AND ENERGY EFFICIENCY RATING DISCLOSURES:

Pursuant to Sections 553.9085 and 553.996, Florida Statutes, Purchaser may request that Seller cause a State Certified Energy Rater to perform an energy efficiency rating on the Unit. Purchaser hereby releases Seller from any responsibility or liability for the accuracy or level of rating and Purchaser understands and agrees that this Contract is not contingent upon Purchaser approving the rating, that the rating is solely for Purchaser's own information and that Purchaser will pay the total cost of obtaining the rating.  A copy of the Florida Building Energy-Efficiency Rating System brochure prepared by the Florida Department of Community Affairs in accordance with Section 553.996 Florida Statutes is attached hereto as Exhibit "D" and incorporated herein by this reference.  PURCHASER ACKNOWLEDGES RECEIPT OF THE ENERGY-EFFICIENCY RATING BROCHURE DISTRIBUTED BY THE STATE OF FLORIDA DEPARTMENT OF COMMUNITY AFFAIRS AND STATES THAT PURCHASER WAIVES THE OPPORTUNITY TO OBTAIN AN ENERGY-EFFICIENCY RATING ON THE UNIT.  Seller is providing this disclosure statement to Purchasers in compliance with Sections 553.9085 and 553.996, Florida Statutes. This Disclosure Statement is intended for the sole and exclusive use of Purchaser for the transaction contemplated herein only and Seller shall not be liable or responsible to any third party who has relied upon the information contained herein. Purchaser acknowledges its receipt, review and understanding of this disclosure statement prior to, or at the time of, Purchaser's execution of this Contract.

13.    RADON GAS DISCLOSURE:

The following disclosure is required by Section 404.056(5), Florida Statutes, for all contracts for sale and purchase of any building in Florida:

"Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time.  Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit."

14.    REAL ESTATE COMMISSIONS:

Each party warrants, acknowledges and agrees that no broker(s) or salesperson(s) other than, Seller's agent, WCI Realty, Inc. and ___Keller Williams___ ("Broker") have ever been involved in the transaction contemplated herein and each party covenants and agrees to indemnify and hold the other harmless from and against any and all claims made by any broker(s) or salesperson(s) seeking any commission or compensation for any loss, liability, costs or expense arising by, through or under said indemnifying party. Such indemnification shall include reimbursement of any attorneys' fees and costs, including those accruing from alternate dispute resolution proceedings, trial and appellate proceedings, incurred as a result of such claims made or such lawsuits filed. Purchaser acknowledges that sales associates of WCI Realty, Inc. and Broker are being paid by Seller through payments to WCI Realty, Inc. Purchaser understands and agrees that this Section 14 shall survive the Closing and delivery of the Deed.

15.    NOTICE:

Whenever a notice is required to be sent under the terms of this Contract, the notice will be deemed to have been properly given or served (a) when delivered in fact to the other party, (b) when delivered to and receipted for by a recognized air courier service (i.e., Federal Express, DHL), (c) by facsimile transmittal when transmitted by a mechanism capable of producing a confirmation of receipt, or (d) when deposited in the United States mail with adequate postage prepaid and sent by certified mail, return receipt requested, and in all events when addressed to Purchaser at the address set forth on the first page of this Contract and when addressed to

6

Seller at: One Singer Island Condominium Project Manager, c/o WCI Communities, Inc., 11631 Kew Gardens Avenue, Palm Beach Gardens, Florida 33431, with a copy to: WCI Communities, Inc., 24301 Walden Center Drive, Bonita Springs, Florida 34134, Attention: Legal Department, or to such other address as either party may specify in writing in accordance with this notice provision. All notices shall also be effective upon refusal or failure to accept delivery or otherwise.

16.    RISK OF LOSS PRIOR TO CLOSING:

Any loss and/or damage to the Condominium and/or the Unit between the date of this Contract and the date of the Closing will be at Seller's sole risk and expense. Seller will have a reasonable time to complete repairs, but in no event will such time for repairs and subsequent date of the Closing extend the two (2) year period for completion of construction of the Condominium described in Section 3.D. hereof. The work will be judged by the same standards used to evaluate new construction. Purchaser will have no right to any reduction in the Total Purchase Price, nor any claim against Seller by reason of the loss and/or damage or delay, and agrees to accept title on the date scheduled for the Closing.

17.    ADDENDUM OR RIDER:

Any rider or addendum to this Contract will be deemed to be incorporated into this Contract as fully as if it were set forth at length herein. The terms and provisions of any such rider or addendum will control those of this Contract, but only to the extent necessary to give them full effect. No such rider or addendum to this Contract shall be binding or effective unless and until executed by both Purchaser and Seller.

18.    INSPECTION PROCEDURE:

A.    Purchaser is required to conduct a personal inspection of the Unit with Seller's representative not later than the date established by Seller in written notification delivered to Purchaser, which date will not be less than fifteen (15) days after such notification is delivered.

B.    If Purchaser is unable to conduct the personal inspection of the Unit with Seller on the date so established, Purchaser may designate a representative by written notice delivered to Seller not less than ten (10) days prior to such date. Purchaser will be bound by the actions of such representative.

C.    During such personal inspection, Purchaser or Purchaser's representative and Seller (or Seller's representative) will complete a list of inspection items in the Unit which require Seller's (or Seller's representative's) attention. Purchaser (or Purchaser's representative) and Seller shall sign the list as conclusive evidence of the agreed upon work to be performed. At such time as the agreed work has been performed (which shall be within a reasonable time considering the availability of materials and the nature of the work to be performed), it shall be deemed conclusive that Seller's obligations have been fulfilled and any additional items shall be the responsibility of Purchaser.

D.    Purchaser's decorator and contractor will be allowed access to the Unit only subsequent to the completion of the personal inspection, signing of the list of inspection items by Purchaser (or Purchaser's representative) and the Closing. Except as provided in Section 18.A. above, neither Purchaser nor Purchaser's agents shall have access or entry to the Unit nor shall Purchaser store any possessions in or about the Unit or the Condominium property prior to the Closing of this transaction. Purchaser shall not interfere with workmen upon the job site.

E.    It is agreed by the parties that the fact that the parties have not completed the inspection, or that items listed on the hereto inspection list have not been addressed by Seller, shall not entitle Purchaser to delay the Closing, request a set off, to place in escrow or withhold money due Seller at the Closing or impose any condition on Seller, and a refusal to close as scheduled shall constitute a default by Purchaser hereunder. Seller's obligation to perform the work agreed upon in the list of inspection items shall survive the Closing.

F.    Failure of Purchaser to conduct the personal inspection and complete and sign the list of inspection items by the date established in Section 18.A. and Section 18.B. hereof shall be deemed to be (i) conclusive evidence of Purchaser's acceptance of the Unit "AS IS" and (ii) a complete waiver of all objections to defects in workmanship or materials. This shall not be deemed to be a waiver of any warranties provided to Purchaser by law.

G.    The provisions of this Section 18 are not intended to limit or waive, in violation of Chapter 718 of the Florida Statutes, any of Purchaser's rights thereunder.

19.    CONDOMINIUM DOCUMENTS:

Purchaser hereby acknowledges receipt of the condominium documents required by Section 718.504, Florida Statutes (2003), to be provided by Seller to Purchaser (sometimes referred to herein collectively as the

7

"Condominium Documents"). Seller and Purchaser acknowledge that separate and apart from the provisions of this paragraph, Seller is obligated to obtain from Purchaser a Receipt for Condominium Documents (in accordance with Florida administrative rules) acknowledging receipt of the required Condominium documents, and Purchaser agrees to provide such Receipt upon delivery of such documents.

20.    TIME:

Time is of the essence for making all payments due pursuant to this Contract and for the Closing of the transaction contemplated herein. Time otherwise may be made of the essence by not less than five (5) days advance written notice. Other than the rescission period referred to in the first paragraph of Section 38 below, any time period measured in "days" means consecutive calendar days, except that the expiration of any time period measured in days that expires on a Saturday, Sunday, or nationally observed legal holiday automatically will be extended to the next day that is not a Saturday, Sunday, or nationally observed legal holiday.

21.    CONSTRUCTION LAW AND MORTGAGES:

Purchaser acknowledges that notices of commencement may be filed of record and that the Unit may be encumbered by mortgages at the time of the Closing, and agrees that same shall not be an objection to title, it being understood that the Unit will be released from the liens of such notices and such mortgages utilizing the proceeds received at the Closing. Purchaser acknowledges and agrees that to the extent permitted under applicable law (including, without limitation, Chapter 718 of the Florida Statutes (2003)), the lien of any mortgage(s) granted by Seller to its lender(s) (whether or not such loans are made for the purpose of construction financing) on the Unit or the Condominium shall be superior in right and priority to any lien of Purchaser as vendee or otherwise and that this provision shall be self-operating, not require execution and delivery of additional documents and be for the benefit of Seller and any such lenders; provided, however, this provision shall not affect Seller's obligation to obtain release of such mortgage(s) at the Closing with respect to the Unit.

22.    CONTINUING SALES AND DEVELOPMENT PROGRAM:

Purchaser understands and agrees that Seller is engaged in a sales and development program in the Condominium and that such program will continue after the Closing of the purchase of the Unit. Purchaser agrees that after the Closing, Seller may use units owned by it or other persons as models, continue its sales and development program in the Condominium (including Seller's employees present on the premises to show units, use Condominium facilities and/or property), maintain such signs on its property and on the "Common Area," as such term is defined in the Declaration, of the Condominium or make use of such of the Common Area of the Condominium as may be necessary or convenient for Seller to complete its sales and development program, all without contribution. The agreements of Purchaser stated in this Section 22 will survive the Closing and continue until completion of the sales and development program for the Condominium.

23.    ACCESS MONITORING:

The Condominium Association may maintain or support certain activities in the Condominium designed to make the area safer than it otherwise might be, but the Condominium Association is not obligated to do so. Neither Seller, the Condominium Association nor any other community organization or any predecessor, successor or any of them, or any of their affiliates, consultants, employees, officers, directors, agents, contractors or subcontractors, or their respective affiliates (collectively, the "Companies") (a) shall be held liable for any loss or damage because of a failure to provide adequate security or because of the ineffectiveness of security measures undertaken, (b) represents or warrants that any fire protection system, burglar alarm system or other security system designed by or installed according to guidelines established by any of them cannot be compromised or circumvented, or will prevent loss by fire, smoke, burglary, theft, hold-up, assault, or otherwise, or in all cases will provide the detection or protection for which the system is designed or intended or (c) makes any other representation or warranty, expressed or implied, including any warranty of merchantability or fitness for any particular purpose, relative to any fire, burglar or other security system. Purchaser, on behalf of Purchaser and all tenants, guests and other invitees of Purchaser, acknowledges and agrees that the Companies are not insurers and each purchaser, occupant and invitee of any unit in the Condominium assumes all risks for loss or damage to persons, the Unit, contents of Unit or other property owned by any of them which might or could have been prevented by any device or system referred to in this Section 23, or its proper functioning. The provisions of this Section 23 will survive the Closing.

24.    EXPRESS LIMITED WARRANTY AND WAIVER OF ALL OTHER WARRANTIES:

Except for the implied warranties provided in Section 718.203, Florida Statutes (2003), there are no implied warranties of any kind, including, but not limited to, implied warranties for habitability, fitness, merchantability, workmanship or construction covering the Unit, fixtures, personal property, limited common elements or common elements or any other property sold pursuant to this Contract or related to the Condominium. Purchaser is buying and shall accept possession of the Unit, limited common elements and all appurtenances to the Unit and the personal property and fixtures being sold under this Contract "AS IS" and in the same condition at the time of Purchaser's inspection pursuant to Section 18 hereof, or, if no such inspection is made, then "AS IS" and in the condition at the time of the Closing. Nothing contained in this Section 24 shall be deemed to exclude the implied warranties provided in said Section 718.203, Florida Statutes (2003), but the implied

8

warranties contained therein shall be conditioned upon routine maintenance being performed, unless the maintenance is an obligation of Seller or an association controlled by Seller obligated to effect such maintenance pursuant to a written contract for such services. Seller will deliver and transfer to Purchaser all transferable warranties of appliances or other elements for which manufacturers' or suppliers' warranties are furnished. Seller's warranty is strictly limited as stated in this Section 24 and as otherwise may be provided by applicable law, and Seller makes no other or further warranty. Purchaser agrees that Seller's liability under the warranties provided by Section 718.203, Florida Statutes (2003), is limited to the actual cost of repair or correction of any defect covered by said warranties and Seller shall have no liability for consequential damages. The provisions of this Section 24 shall survive the Closing.

25.     MISCELLANEOUS PROVISIONS:

        A.      Entire Agreement: This Contract, together with all exhibits, constitutes the entire agreement between Purchaser and Seller with respect to the transaction contemplated herein. All prior understandings are superseded by and merged into this Contract. No oral representations, advertising, promotional activities, maps, artists' renderings, conceptual presentations or otherwise, made by Seller or Seller's agents shall in any way be binding on Seller and will be of no force or effect unless expressly set forth in this Contract as to either the Condominium property or the Unit including, without limitation, the workmanship and materials. No warranties, expressed or implied, are given, except those contained in Chapter 718, Florida Statutes. This Section 25.A. shall survive the Closing and the delivery of the Deed to Purchaser.

        B.      Contract Non-Recordable; Persons Bound; and Notice: Neither this Contract nor any notice of it shall be recorded in any Public Records and to do so shall be a substantive breach of this Contract. This Contract shall bind and inure to the benefit of the parties hereto and their successors in interest, heirs and assigns. Notice given by or to the attorney for either party shall be as effective as if given by or to that party.

        C.      Invalidity: In case any one or more of the provisions contained in this Contract shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision and this Contract shall be construed as if such invalid, illegal or unenforceable provision has never been contained in this Contract.

        D.      Authorization to Amend Documents: Purchaser authorizes Seller to record the documents which Seller believes necessary to establish, operate, maintain and improve the Condominium, as well as all other documents which Seller deems necessary or appropriate, and all amendments and supplements to them in the Public Records of Palm Beach County, Florida.

        E.      Applicable Law: This Contract and all documents executed in accordance with the terms of this Contract shall be interpreted, construed, applied, and enforced in accordance with and governed by the laws of the State of Florida, without application of conflict of law principles, regardless of where executed, delivered, performed or breached, or the venue of any suit or other proceeding involving this Contract is instituted or pending, or whether the laws of the State of Florida otherwise would apply the laws of another jurisdiction.

        F.      Attorney Fees and Costs: In connection with any alternative dispute resolution proceedings or litigation, including appellate proceedings, arising out of this Contract, the prevailing party shall be entitled to recover attorneys' fees and costs at trial, bankruptcy court and all appellate levels.

        G.      Captions: Captions of the paragraphs and subparagraphs of this Contract are for the convenience of reference only, are not to be considered a part hereof and will not limit or otherwise affect any of the terms hereof.

        H.      Amendments: This Contract and the instruments and documents referred to herein and made a part hereof as if fully set forth herein constitute the full, final and complete agreement between the parties and no oral representations, claims, statements, advertising, or promotional activities made by Seller or Seller's agents or representatives shall in any way be binding upon Seller unless expressly set forth in a written agreement addendum executed by Seller. Seller reserves the right to modify or amend the Condominium Documents and Buyer shall receive a copy of any such amendment(s) made. Nothing contained herein shall require Seller to secure Buyer's approval of any change in the prices or terms upon which Seller may sell the remaining units. Without limiting the generality of the foregoing and other provisions of this Agreement, Seller is specifically authorized to substitute the final legal descriptions, plot plans, and as-built surveys for the proposed legal descriptions and plot plans contained in the Condominium Documents even though changes occur in the permitting stage and during construction. Buyer specifically grants authority to Seller to file in the Public Records of Palm Beach County, Florida prior to Closing, all papers required to be filed by Florida Statutes in order to legally create and maintain the existence of the Condominium, the Condominium Association, including, but not limited to, the Condominium Declaration, the Articles of Incorporation and Bylaws of the Association. This Section 25.H. will survive Closing and delivery of the Deed.

        I.      Indemnification: "Indemnify" means that the indemnitor will defend, indemnify and hold the indemnitee harmless from and against any and all claims, demands, losses, liabilities including strict liability, damages, injuries and expenses, including attorneys' fees for attorneys of the indemnitee's choice, costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted

against the indemnitee by any person or entity or governmental agency for, with respect to, or as a direct result of the subject matter of the indemnity. The scope of any indemnity includes any costs and expenses, including attorneys' fees, incurred in defending any indemnified claim, or in enforcing the indemnity or both. Any express indemnities contained in this Contract survive the Closing of the transaction contemplated herein.

J.      Survival:  All terms, conditions, covenants and agreements contained in this Contract (including, but not limited to, the provisions contemplated in Subsections 25. B, E, F, H and K hereof), if the fulfillment of their purpose(s) require(s), shall survive the Closing and be binding on Seller and Purchaser and any subsequent purchaser of the Unit.

K.      Venue:  Purchaser waives any and all privileges and rights which it may have under Chapter 47, Florida Statutes, relating to venue, as it now exists or may hereafter be amended, and any comparable statute or administrative provision and Purchaser further agrees that any legal action brought on this Contract shall be brought in the appropriate forum in Palm Beach County, Florida.

L.      No Liens:  Prior to the Closing, Purchaser shall not place or allow any lien to be placed on the Unit.

M.      Waiver:  The waiver of one or more defaults by any party to this Contract shall not be deemed a waiver of any subsequent default of that provision of this Contract or default under any other provision of this Contract. No waiver of the benefit of any provision of this Contract will be effective unless made in writing, signed by the party to be charged and no such waiver is a waiver of any future event, unless it expressly so states.

N.      Counterparts:  This Contract may be executed simultaneously in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

O.      Gender:  The use of the singular includes the plural. The use of the male includes the female and neuter and vice versa.

P.      Facsimile:  A facsimile (FAX) signature will be deemed to be an original. Offer and/or acceptance by facsimile is binding.

Q.      Construction:  This Contract and all related documents, including, without limitation, the Deed, will not be construed more strongly against any party regardless of who was more responsible for its preparation.

R.      Joint and Several Liability:  If two (2) or more persons are named as Purchaser herein, any one (1) of them is authorized to act as agent for, with the right to bind, the other(s) in all matters and of every kind and nature with respect to this Contract. If the Purchaser is married, and the Purchaser's spouse is not named as a Purchaser herein, Purchaser shall be responsible and liable for such spouse executing the mortgage and other Closing documents as required by lender and Seller. Failure of said spouse to do so shall constitute a default hereunder by Purchaser.

S.      Change in Entity:  Purchaser acknowledges and agrees that (i) a conversion by Seller of its form of business organization, (ii) a merger by Seller with any entity(ies), or (iii) a change of Seller's name or any or all of the above in combination, shall not be deemed to be a material or adverse change.

T.      Seller's Contract Rights:  Purchaser agrees, that to the extent permitted by applicable law (including, without limitation, Chapter 718 of the Florida Statutes (2003), Seller may assign, convey, transfer or factor (singularly and collectively, a "Transfer") some or all of its rights under this Contract; provided, however, such a Transfer, shall not affect or limit Seller's obligations or liability under this Contract or the Condominium Documents provided to Purchaser. The provisions of this Section 25.T. shall be self-operating, not require execution and delivery of additional documents and be for the benefit of Seller and any of its lenders, successors, assignees or transferees. Notice of such assignment may be delivered to Purchaser at the address set forth in this Contract.

U.      No Representations; No Reliance:  Other than as expressly set forth below, no person, including any sales agent of WCI Realty, Inc. or any other real estate brokerage firm, is authorized to make any representations or to provide any information with regard to any of the matters contained in this Contract, which are contrary to or in addition to the information contained in this Contract or in the applicable or related Declaration of Condominium, as amended.  PURCHASER ACKNOWLEDGES, REPRESENTS AND WARRANTS TO SELLER THAT, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH BELOW, NO SUCH REPRESENTATIONS HAVE BEEN MADE TO (OR, IF MADE, HAVE NOT BEEN RELIED UPON BY) PURCHASER OR BY ANY OTHER PERSON OR ENTITY AND FURTHER THAT PURCHASER HAS NOT RELIED ON ANY REPRESENTATIONS, NEWSPAPER, RADIO OR TELEVISION ADVERTISEMENTS. WARRANTIES, STATEMENTS, OR ESTIMATES OF ANY NATURE WHATSOEVER, WHETHER WRITTEN OR ORAL, MADE BY SELLER, SALES PERSONS, AGENTS, OFFICERS, EMPLOYEES, COOPERATING BROKERS (IF ANY) OR OTHERWISE EXCEPT AS HEREIN AND IN THE CONDOMINIUM DOCUMENTS SPECIFICALLY SET FORTH. PURCHASER HAS BASED PURCHASER'S DECISION TO PURCHASE THE UNIT SOLELY ON THE REPRESENTATIONS DESCRIBED BELOW, IF ANY, PERSONAL INVESTIGATION, OBSERVATION AND THE

10

CONDOMINIUM DOCUMENTS. Purchaser is relying upon the following additional representations that have been made to Purchaser by Seller and/or its agents concerning the Unit and the Condominium: _____

PURCHASER'S INITIALS: _____

Purchaser's representation and warranty above that it has not received or relied upon any other representations with respect to the Unit or the Condominium, other than as expressly set forth above, is a material inducement for Seller's acceptance of Purchaser's offer contained herein and such representation and warranty constitutes a substantial aspect of the consideration delivered to Seller by Purchaser for the purchase of the Unit.

V.    Effective Date:  As used herein, the term "Effective Date" shall mean and refer to the date this Contract is executed by Seller.

W.    Conflict Regarding Unit Configuration, Size and Layout:  In the event that the configuration, size or layout of the Unit as depicted on any sales materials or brochures differs from or conflicts with the configuration, size or layout of the Unit as depicted on the Condominium Documents, the configuration, size and layout of the Unit as depicted on the Condominium Documents shall control.

X.    Sales Activities:  Purchaser acknowledges that Seller or a company or other entity affiliated with Seller shall have the right to utilize all of the common elements of the Condominium (including roadways and recreational facilities) and any models and/or sales office located or to be located in the Condominium in connection with the sale or lease of dwelling units in the Condominium.

Y.    Payment by Broker:  By the execution hereof, Purchaser directs Broker to pay to Seller all monies received under this Contract by Broker prior to or at the Closing.

Z.    Purchaser Representations:  Purchaser acknowledges and agrees that the representations made to Seller hereunder are a material inducement to Seller to enter into this Contract and that such representations shall survive the Closing.

AA.    Required Amendment:  If the Florida Division of Land Sales, Mobile Homes and Condominiums requires any amendment to this Contract, or if an amendment is required to comply with the applicable law, Purchaser hereby consents to such amendment.

BB.    Life Safety Disclosures.  Purchaser is hereby placed on notice that an emergency stairwell is constructed adjacent to the service hallway and service elevator serving each of Penthouse Estate Units 8, 9, 10, 11 and 12 ("Penthouse Estate Units") which stairwell is accessed by two (2) doors (the "Access Doors") between the gallery of each Penthouse Estate Unit and the service hallway where the emergency stairwell is located, the purpose of which is to allow ingress and egress by persons in the Penthouse Estate Unit and persons present on all floors above the Unit, including, without limitation, the roof, in the event of fire or other emergency. In an emergency, the Access Doors will automatically unlock.  By acceptance of their deed or other conveyance or mortgage, leasehold, license or other interest, and by using any of the Penthouse Estate Units or the roof of the Building, each such owner, occupant and user automatically acknowledges and understands that Seller has been advised that, in order to comply with applicable governmental life-safety code requirements, such Access Doors must not be blocked or otherwise obstructed by furniture, personal property or other means at any time and must always remain accessible for emergency ingress and egress.  In order to exit the Building in the event of an emergency that blocks any portions of the stairwell, persons descending the stairs from higher floors must traverse the gallery on any Penthouse Estate floor or floors on which the blockage occurs, to access the stairwell to the next floor below. The Declaration of Condominium will include an easement across such galleries for such emergency purpose. Each owner, occupant and user is hereby informed of their respective obligations to maintain the Access Doors to the emergency stairwell unobstructed at all times, and each owner and occupant and user assumes all risk for loss, injury or damage to persons, the Penthouse Estate Units and improvements thereon or therein resulting from, arising out of, or in any manner related to use of the Access Doors in such emergency or to any impairment of ingress and egress through the Access Doors, whether by blockage of the doors or otherwise. Each owner and occupant and user of any Unit further acknowledges that the Seller, the Condominium Association and their respective designees and successors have no obligation to maintain accessibility through the Access Doors or the security of the gallery in each of the Penthouse Estate Units or any portions of each Unit accessible through the gallery, and that neither the Seller nor the Condominium Association nor their designees or successors have made any representations or warranties, nor has any owner or occupant or user relied upon any representations or warranties, express or implied, in any manner related to the maintenance of the accessibility of such doors, or any security or life-safety issues related to the doors or use thereof, or access to galleries and other portions of the Penthouse Estate Units through such doors.

26.    CONSTRUCTION INDUSTRIES RECOVERY FUND:

Pursuant to Section 489.1425 of the Florida Statutes, Seller provides the following notice.  PAYMENT MAY BE AVAILABLE FROM THE CONSTRUCTION INDUSTRIES RECOVERY FUND IF YOU LOSE

11

MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A STATE LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS: (850) 487-1395, 1940 MONROE STREET, TALLAHASSEE, FL 32399-0783.

27.    PROVISIONS RELATING TO CONTRACTS SIGNED AFTER THE COMPLETION DATE:

☐    Checking the box at left indicates this Contract is executed after the Completion Date, and as such, the following provisions shall be applicable to this Contract. For purposes of this Contract, the term "Completion Date" shall mean the date that a certificate of occupancy has been issued for the building containing the Unit and all other requirements for completion of improvements are met, as specified in Chapter 718, Florida Statutes.

     A.    The provisions of Sections 2. A. C., D. and E. shall not be applicable to this Contract, and Closing shall occur on or before _____, 200___.

     B.    The provisions of Section 6 shall not be applicable to this Contract and Purchaser acknowledges that there has been made available to Purchaser and that Purchaser has been shown the model and/or the model floor plans of the Condominium and the type of unit being purchased by Purchaser hereunder. Purchaser further acknowledges that Seller has made available to Purchaser complete Plans and Specifications for the Unit and the improvements comprising the common elements and that Purchaser has had the right and opportunity to examine the Unit and the Condominium.

C.    Any provision relating to the escrow of deposit monies shall not be applicable to this Contract

28.    INCENTIVE PROGRAMS:

     At various times, Seller or its affiliates adopts incentive programs with its affiliated brokerage entities, WCI Realty, Inc. and Prudential Florida WCI Realty, under which the agents of such affiliated brokerage entities receive bonuses in addition to commissions for sales of lots or single family residences constructed by Seller or its affiliates or for sales of residences in condominiums constructed and/or developed by Seller or its affiliates, which may include the Unit.

29.    PET RESTRICTIONS:

     Purchaser understands that the only pets allowed on the Condominium are those which are in accordance with the restrictions contained in the Condominium Declaration or any amendments thereto.

30.    CORPORATE, BUSINESS ENTITY, FIDUCIARY OWNER OR MULTIPLE INDIVIDUALS AS A PURCHASER:

     Inasmuch as the Condominium may be used only for residential purposes and neither a corporation, fiduciary or business entity or multiple individuals can occupy a Unit for such use, if the "Purchaser" is a corporation, business entity or multiple owners, the Purchaser shall designate one individual who shall be the "primary occupant" of the Unit and approval of ownership by the corporation, fiduciary, business entity or such owners shall be conditioned by requiring that such primary occupant be also approved by the Condominium Association. The approval of ownership by a Trustee or other holder of legal title for a beneficial owner who is to be the primary occupant of a Unit shall also be conditioned upon approval of such primary occupant by the Condominium Association. Any change in the "primary occupant" of a Unit shall be considered a transfer of title to the Unit which shall be subject to the provisions of the Declaration. As used herein, the term "primary occupant" shall be a natural person who, for residential purposes with his or her immediate family, will be the persons permitted to occupy the Unit. If this Contract is executed by an individual in a representative capacity on behalf of a corporation, trust or business entity which has not in fact been legally created at the execution hereof, the individual executing this Contract shall be deemed to have executed this Contract in their individual capacity and shall be personally liable and responsible for the burdens, duties, liabilities and obligations of the "Purchaser" herein. If two (2) or more persons are named as Purchaser herein, any one (1) of them is authorized to act as agent for, with the right to bind, the other(s) in all matters and of every kind and nature with respect to this Contract. If the Purchaser is married, and the Purchaser's spouse is not named as a Purchaser herein, Purchaser shall be responsible and liable for such spouse executing the mortgage and other Closing documents as required by Purchaser's lender and Seller. Failure of said spouse to do so shall constitute a default hereunder by Purchaser.

31.    ASSOCIATIONS AND CLUB MEMBERSHIPS:

     A.    Association Membership: By purchasing the Unit, Purchaser automatically becomes a member of the Condominium Association. For further information, Purchaser should refer to the text of the Declaration of Condominium. Purchaser will have no rights or privileges of membership in the Condominium Association until after the Closing, unless expressly authorized in writing by Seller. Purchaser acknowledges and understands that Purchaser will be required to pay assessments to the Condominium Association, and that in the event Purchaser defaults in payment of the assessments, said entity will have a lien on Purchaser's Unit, which lien may be foreclosed in the manner prescribed for by law for the foreclosure of mortgages.

12

ANY AND ALL AMOUNTS LISTED IN THE CONDOMINIUM DOCUMENTS THAT YOU WILL PAY TO THE CONDOMINIUM ASSOCIATION ARE SUBJECT TO CHANGE IN THE FUTURE. IT IS VERY LIKELY THAT CHANGES WILL OCCUR AND THE AMOUNTS WILL INCREASE, ESPECIALLY AS A RESULT OF THE RISE IN INSURANCE PREMIUMS, AND THESE INCREASES WILL BE BEYOND THE CONTROL OF THE DEVELOPER. YOU ARE ADVISED TO INCLUDE THE POTENTIAL INCREASES IN THESE AMOUNTS IN YOUR DECISION TO PURCHASE A UNIT.

    B.    <u>Old Palm Golf Club</u>: The Purchaser may apply for a WCI Signature Membership in the Old Palm Golf Club (the "Golf Club") in accordance with the terms and conditions of the Membership Plan of the Golf Club.

EACH INITIAL RETAIL PURCHASER OF A UNIT IN THE CONDOMINIUM MAY AT ANY TIME WITHIN SIXTY (60) DAYS OF THE EFFECTIVE DATE OF THIS CONTRACT (THE "PRIORITY ELIGIBILITY PERIOD") APPLY FOR A WCI SIGNATURE MEMBERSHIP IN THE GOLF CLUB. THE NUMBER OF WCI SIGNATURE MEMBERSHIPS ARE CURRENTLY LIMITED TO 15 AND THE TOTAL NUMBER OF EQUITY MEMBERSHIPS ARE LIMITED AS SET FORTH IN THE MEMBERSHIP PLAN. WCI SIGNATURE MEMBERSHIPS IN THE GOLF CLUB WERE CREATED ONLY FOR PURCHASERS IN WCI COMMUNITIES AND CONDOMINIUMS OTHER THAN OLD PALM. IN THE EVENT PURCHASER FAILS TO APPLY FOR A WCI SIGNATURE MEMBERSHIP WITHIN THE PRIORITY ELIGIBILITY PERIOD, PURCHASER SHALL LOSE ALL RIGHTS TO APPLY FOR SAID MEMBERSHIP.

Purchaser acknowledges that ownership of a Unit in the Condominium or any portion of the Condominium Property or membership in the Condominium Association alone does not give or confer any vested right or easements, prescriptive or otherwise, to use the Golf Club and/or Golf Course, and does not alone grant any membership interest in the Golf Club.

32.    PRIVACY POLICY:

Seller's "privacy policy" is attached hereto as <u>Exhibit "E"</u> and incorporated herein by this reference (the "Privacy Policy"). By its execution hereof, Purchaser hereby expressly acknowledges receipt of a copy of the Privacy Policy.

33.    CONSTRUCTION ACTIVITIES:

Purchaser is hereby placed on notice that Seller and/or its agents, contractors, subcontractors, licensees and other designees will be, from time to time, conducting excavation, construction and other activities within or in proximity to the Condominium. By the acceptance of their deed or other conveyance or mortgage, leasehold, license or other interest, and by using any portion of the Condominium, each such owner, occupant and user automatically acknowledges, stipulates and agrees (i) that none of the aforesaid activities shall be deemed nuisances or noxious or offensive activities, hereunder or at law generally, (ii) not to enter upon, or allow their children or other persons under their control or direction to enter upon (regardless of whether such entry is a trespass or otherwise) any property within or in proximity to the Condominium where such activity is being conducted (even if not being actively conducted at the time of entry, such as at night or otherwise during non-working hours), (iii) Seller and the other aforesaid related parties shall not be liable for any and all losses, damages (compensatory, consequential, punitive or otherwise) injuries or deaths arising from or relating to the aforesaid activities, except resulting directly from Seller's gross negligence or willful misconduct, and (iv) any purchase or use of any portion of the Condominium has been and will be made with full knowledge of the foregoing.

34.    CONSTRUCTION DEFECTS DISCLOSURE:

Pursuant to applicable law, Seller makes the following disclosure:

**FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER OR DESIGN PROFESSIONAL, A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND GUIDELINES UNDER FLORIDA LAW.**

35.    CONSTRUCTION LIEN DISCLOSURE:

In accordance with Sections 5 and 21 of this Contract, Seller is required to convey title to the Residence free and clear of any construction liens resulting from the Seller's construction of the Residence. However, Seller is required to provide Purchaser with the following disclosure pursuant to Section 713.015, Florida Statutes:

**ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY.   THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS OR NEGLECTS TO MAKE OTHER LEGALLY REQUIRED PAYMENTS, THE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY.  THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY. FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX AND IT IS RECOMMENDED THAT WHENEVER A SPECIFIC PROBLEM ARISES, YOU CONSULT AN ATTORNEY.**

36.    SELLER'S RIGHT TO RE-PLAT OR RE-CONFIGURE UNITS:

Prior to the recording of the Condominium Declaration, Seller reserves the right to unilaterally amend the plan of development, re-plat or re-plan portions of the Condominium, so long as such amendment, re-platting, or re-configuring does not materially and adversely affect the Unit or Purchaser.  If Seller shall request that Purchaser join in any documents necessary to carry out the intent of this Section 36, Purchaser will promptly execute and deliver such consents and joinders in such form as Seller reasonably requires.  The provisions of this Section 36 shall survive the Closing.

37.    ACCEPTANCE:

This Contract, as executed by Purchaser and delivered to Seller, together with the delivery of the Initial Deposit to the Escrow Agent, constitutes Purchaser's offer to purchase the Unit.  Purchaser's offer shall only be accepted by Seller's execution of this Contract.  Purchaser must sign and deliver this Contract to Seller, and pay the Initial Deposit to the Escrow Agent, all on or before the ⟍○ day of August, 200⟍4.

38.    Pursuant to applicable law, Seller makes the following disclosure:

14

legal\nmm\One Singer Island\residence purchase contract  v4
May 27, 2004

THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN FIFTEEN (15) DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

SELLER:

WCI COMMUNITIES, INC.,
a Delaware corporation

By: _____

Title _Vice President_

24301 Walden Center Drive
Bonita Springs, FL 34134
(239) 947-2600/239-498-8272 (FAX)
Date signed by Seller: __9-7-04__

PURCHASER:

_Dolphin LLC_
_John Cheng_
_Partner_

Date signed by Purchaser: __8/3/04__

legal\nmm\One Singer Island\residence purchase contract  v4
May 27, 2004

## DEPOSIT RECEIPT

Receipt of the above stated deposit is acknowledged by:

( ) cash, ( ) check, ( ) wire transfer

and will be held in escrow in accordance with the terms and conditions of this Contract.

CHICAGO TITLE INSURANCE COMPANY, as Escrow Agent

Date: _____          By: _____

Chicago Title Insurance Company
5447 Nellie Davis Lane
Tampa, Florida 33634
Telephone: (813) 249-2468
Telecopy:   (813) 885-3622

ONE SINGER ISLAND, A CONDOMINIUM

WIRING INSTRUCTIONS


PLEASE PRESENT THESE INSTRUCTIONS TO YOUR BANK.


CHICAGO TITLE INSURANCE COMPANY
5447 Nellie Davis Lane
Tampa, Florida 33634

Chicago Title Insurance Company Custodial Escrow Deposit Account
Deposit Account Number 1233022482
ABA Number 121000358
Bank of America, N.A.
Concord, CA 94520
Purchaser's Name____Dolphin, LLC_____
Amount of Wire*_____
File Number: 555-[*ONE SINGER ISLAND/Unit Number Here*]
File Name: One Singer Island Unit No. 602
Attention: Maggie Erickson
Phone: (813) 249-2468 ext. 3038

*Please note, the international wire fee must be added to this amount.*


TO PAY BY CHECK:

**Make check payable to Chicago Title Insurance Company**

PLEASE MAIL TO:

         **WCI Realty, Inc.** (branch office)
         _____
         _____

Deposit checks and a copy of this Contract will be delivered to CHICAGO TITLE INSURANCE COMPANY.

legal\mm\One Singer Island\residence purchase contract  v4
May 27, 2004

## LIST OF EXHIBITS

Exhibit "A"    Real Property Disclosure Statement
Exhibit "B"    Permitted Exceptions
Exhibit "C"    Affiliated Business Arrangement Disclosure Statement Notice
Exhibit "D"    Florida Building Energy-Efficiency Rating System Brochure prepared by the Florida
               Department of Community Affairs in accordance with Section 553.996, Florida Statutes
Exhibit "E"    Privacy Policy Disclosure Statement

## COOPERATING BROKER ADDENDUM

THIS COOPERATING BROKER ADDENDUM (this "Addendum") is executed in conjunction with and, by this reference, incorporated into the Residence Purchase Contract (the "Contract") dated as of _8/3/04_ by and between _Dolphin LLC_ ("Purchaser") and WCI Communities, Inc., a Delaware corporation ("Seller") with respect to Unit # _602_ (the "Unit") in One Singer Island, a Condominium (the "Condominium"), pursuant to the Declaration of Condominium for One Singer Island, a Condominium to be recorded in the Public Records of Palm Beach County, Florida (the "Condominium Declaration").

ADDITIONAL TERMS:

1. **Defined Terms.** All initially capitalized terms not defined herein shall have the meanings set forth in the Contract.

2. **Cooperating Broker.** Notwithstanding anything contained in the Contract to the contrary, Seller and Purchaser acknowledge that Purchaser has dealt with the following brokerage firm (the "Cooperating Broker"):

   Name of Cooperating Broker: _KELLER WILLIAMS REALTY_

   Address: _2901 PGA BLVD SUITE 100_

   Business Phone: _561 · 656 · 2923_

   Name of Sales Associate of Cooperating Broker: _KEVIN MECABE_

3. **Commission.** Seller shall pay Cooperating Broker a three (3%) percent commission ("Commission") payable as follows:  A) In the event that (i) the Contract is fully and completely executed and is accepted by Seller; (ii) the Contract contains no conditions to Closing or rights to terminate in favor of the Purchaser; and (iii) Seller has received the full amount of the Deposit, then Seller shall pay one-half (1/2) of the Commission to Cooperating Broker; and B) the balance of the Commission (one-half (1/2) of three (3%) percent) shall be paid by Seller to Cooperating Broker at Closing.  Purchaser agrees to be responsible for any commission due to the Cooperating Broker in excess of the Commission and covenants to indemnify and hold Seller harmless of any loss, cost or expense, including attorney's fees and paraprofessional fees at trial and upon appeal, as to all claims of real estate brokers or salesmen in excess of the amount agreed upon herein payable as a result of the acts of Purchaser or Purchaser's representatives. The parties agree that the Commission is only being paid to Cooperating Broker and shall not be deemed earned until the terms of this paragraph have been met.  In the event the Contract does not close as contemplated by the Contract, Seller shall have the right to a full and complete refund of the Commission from Cooperating Broker and/or Sales Associate. Notwithstanding the foregoing, Seller agrees to pay any and all commissions or other compensation due to Seller's selling agents working in Seller's sales office.

4. **Sales Associate of Cooperating Broker.** By signing below, Sales Associate of Cooperating Broker ("Sales Associate"), agrees on behalf of himself/herself and on behalf of Cooperating Broker, to the terms hereof.  Without limiting the foregoing, Sales Associate agrees that the Seller's sole responsibility hereunder is to pay the Commission to Cooperating Broker at Closing. Any other amounts payable to Sales Associate and/or Cooperating Broker shall be the sole responsibility of Purchaser.

5. **Conflicts.** In the event of any conflict between this Addendum and the Contract, this Addendum shall control.  In all other respects, the Contract shall remain in full force and effect.

SELLER:                                          PURCHASER:

WCI COMMUNITIES, INC., a                         Name: _DOLPHIN LLC_
Delaware corporation
                                                 Date: _JOHN CHERIN_
By: _Paul Drummond_                                    _PARTNER_
    Vice President
                                                 Name: _____
Date: _9-7-04_
                                                 Date: _8/3/04_

SALES ASSOCIATE OF COOPERATING BROKER

Name: _KEVIN MECABE_

Date: _8-3-04_

## ONE SINGER ISLAND, A CONDOMINIUM
### ADDENDUM TO RESIDENCE PURCHASE CONTRACT

This is an Addendum to the Residence Purchase Contract dated as of _8/3_, 200_4_ between _DolPHin LLC_ _____, as Purchaser, and WCI COMMUNITIES, INC., as Seller ("Contract"), for the purchase and sale of Unit # _1602_ of One Singer Island, a Condominium (the "Unit").

The parties agree that the above referenced Contract shall include the following:

Due to the fact that the proposed Declaration of Condominium for One Singer Island (the "Declaration") includes Section 10.2, which provides, among other things that use and occupancy of the Units is restricted to residential purposes and neither a corporation, fiduciary or business entity or multiple individuals can occupy a Unit for such use, in order to induce Seller to enter into the referenced Contract, Purchaser agrees and bind itself to the following:

If the referenced sale and purchase is closed, occupation of the Unit shall be limited to a natural person pre-approved by the Association designated as the "Primary Occupant" and the members of his or her immediate family, and the Unit may not be occupied (if a partnership, limited liability company, corporation, trust, other business entity, or multiple owners) by other partners, officers, directors, employees, staff or their guests in the absence of the "Primary Occupant." Upon application to the Association for approval, the "Primary Occupant" may be changed and the same procedure shall be followed as provided in Section 10.2 of the Declaration for a proposed sale of the Unit.

The Contract is hereby amended to provide that the initial "Primary Occupant" of the Unit shall be _John CHerin_ _____ and his or her immediate family.

The foregoing shall survive the closing of this transaction and shall be binding upon the parties, their heirs, successors, personal representatives and assigns.

SELLER:                                    PURCHASER:

WCI COMMUNITIES, INC.                       _DolpHny LLC_

By: _____                      By: _JOHN CHSRIN_

Title: _Vice President_                    Title: _PARTNER_

Date signed by Seller: _9-7-04_            Date signed by Purchaser: _8/3/04_

Legal/nmm/One Singer Island/ primary occupancy addendum

## RECEIPT FOR CONDOMINIUM DOCUMENTS

The undersigned acknowledges that the documents checked below have been received or, as to plans and specifications, made available for inspection.

Name of Condominium  ONE SINGER ISLAND
A CONDOMINIUM

Address of Condominium  5310 North Ocean Blvd.
Riviera Beach, Florida

Place a check in the column by each document received, or, for the plans and specifications, made available for inspection.  If an item does not apply, place "N/A" in the column.

| DOCUMENT | RECEIVED |
|---|---|
| Prospectus Text | N/A |
| Declaration of Condominium | ✓ |
| Articles of Incorporation | ✓ |
| Bylaws | ✓ |
| Estimated Operating Budget | ✓ |
| Form of Agreement for Sale or Lease | ✓ |
| Rules and Regulations | ✓ |
| Question and Answer Sheet | ✓ |
| Ground Lease | N/A |
| Management and Maintenance contracts for More than One Year | N/A |
| Renewable Management Contract | N/A |
| Lease of Recreation and Other Facilities to be Used Exclusively by Unit Owners of Subject Condominiums | N/A |
| Form of Unit Lease if a Leasehold | N/A |
| Declaration of Servitude | N/A |
| Sales Brochures | ✓ |
| Phase Development Description (See 718.503(2)(k) and 504(14)) – set forth in Prospectus and Declaration of Condominium | N/A |
| Lease of Recreational and Other Facilities to be Used by unit owners with other condominiums (See 718.503(2)(k)) | N/A |
| Description of Management for Single Management of Multiple Condominiums (See 718.503(2)(k)) | N/A |

007.152440.2

| | |
|---|---|
| Conversion Inspection Report | N/A |
| Conversion Termite Inspection Report | N/A |
| Plot Plan | |
| Floor Plan | |
| Survey of Land and Graphic Description of Improvements | |
| Executed Escrow Agreement | |
| Plans and Specifications | MADE AVAILABLE |

THE PURCHASE AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THE PURCHASE AGREEMENT BY THE BUYER AND RECEIPT BY THE BUYER OF ALL THE DOCUMENTS REQUIRED TO BE DELIVERED TO THE BUYER BY THE DEVELOPER.   THE PURCHASE AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER.   ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE DOCUMENTS REQUIRED. BUYER'S RIGHT TO VOID THE PURCHASE AGREEMENT SHALL TERMINATE AT CLOSING.

Executed this 30 day of August , 200 4

Purchaser

Dolphin LLC

JOHN CHERIN.

Purchaser

PARTNER

8/3/04

007.152440.2



ORIGINAL

**ADDENDUM TO THE ONE SINGER ISLAND, A CONDOMINIUM
PURCHASE CONTRACT**

**THIS ADDENDUM TO PURCHASE CONTRACT** (this "Addendum") is made, entered into and effective as of _Nov 28th_ 2006 by and between **DOLPHIN, LLC**, a Florida limited liability company, having an address at 662 Live Oak Drive, McLean, VA 22101 (the "Purchaser"), and **WCI COMMUNITIES, INC.**, a Delaware corporation, having a mailing address at 24301 Walden Center Drive, Bonita Springs, Florida 34134 (the "Seller").

**W I T N E S S E T H :**

A.       Pursuant to the terms of that certain Purchase Contract dated as of September 7, 2004 by and between the Purchaser and the Seller (the "Contract"), the Purchaser agreed to purchase from the Seller and the Seller agreed to sell to the Purchaser that certain condominium unit designated as Unit 602, in ONE SINGER ISLAND, A CONDOMINIUM (the "Unit"), pursuant to the Declaration of Condominium to be recorded in the Public Records of Palm Beach County, Florida (the "Declaration").

B.       The Purchaser and Seller desire to amend the terms of the Contract in accordance with the terms set forth below.

NOW, THEREFORE, for and in consideration of the Recitals above, Ten and No/100 Dollars ($10.00), the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged by the parties, the Seller and the Purchaser hereby agree as follows:

1.       Except as otherwise provided herein, all capitalized terms used herein, not otherwise defined herein, shall have the same meaning herein as given such term in the Contract.       _With no penalties_

2.       Although Closing was scheduled to occur on November 2, 2006, as an accommodation to Purchaser, Seller agreed by way of prior Addendum to extend the date of Closing to December 1, 2006.  As a further accommodation to Purchaser, Seller agrees to extend the date of Closing to December 6, 2006.  Purchaser agrees that no further notice of Closing shall be required from Seller and that nothing contained in this Addendum shall prevent Seller from immediately treating Purchaser as in default under the Contract without the necessity for any further notice or an opportunity to cure if Purchaser fails to close the transaction by December 6, 2006.

3.       By their execution hereof, the Seller and the Purchaser hereby ratify, adopt and agree to be bound by the terms of the Contract, as amended hereby.

4.       Except as otherwise amended, the Contract shall remain in full force and effect.

5.       In the event of a conflict between this Addendum and the terms of the Contract, the terms of this Addendum shall prevail.

6.       This Addendum supersedes any and all other agreements, written or oral, between the parties pertaining to the subject matter hereof.

7.       This Addendum shall be binding on and shall inure to the benefit of the parties, their respective heirs, successor and assigns.

8.       This Addendum may be altered or amended only with the written consent of the parties hereto.

9.       If any provision of this Addendum or the application thereof to any person or circumstance shall be determined to be invalid or unenforceable, the remaining provisions of this Addendum or the application of such provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby and shall be valid and enforceable to the fullest extent permitted by law.

10.       This Addendum may be executed in several counterparts or by separate instruments, and all of such counterparts and instruments shall constitute one agreement, binding

on all of the parties hereto.  Facsimile signatures of this Addendum shall be deemed valid as original signatures.

11.    This Addendum has been drafted by the Seller as an accommodation to the Purchaser, who expressly agrees that the provisions of neither the Contract nor this Addendum shall be construed against the Seller as a result thereof.

IN WITNESS WHEREOF, the parties have duly executed this Addendum as of the 28th day of ~~November~~, 2006.

SELLER:

WCI COMMUNITIES, INC., a Delaware corporation

By:_____

Title: Authorized Representative

PURCHASER(S):

DOLPHIN, LLC, a Florida limited liability company

By:_____
Printed Name:  John Cherin
Title:  Managing Member

EXHIBIT "C"

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT NOTICE

TO: _Dolphin, LLC_     DATE: _8/3/04_

FROM: Seller as defined in the attached Contract/Agreement
or one of the below-listed affiliates or subsidiaries

PROPERTY: _ONE Singer Island 602_

The following information is provided to you in compliance with the disclosure requirement of Title 24 of the Code of Federal Regulations, Section 3500.15.

This is to give you notice that there is a business relationship between and among WCI Communities, Inc. ("WCI"), Bay Colony-Gateway, Inc. ("BCG"), JYC Holdings, Inc. ("JYC"), Sarasota Tower, Inc. ("Sarasota"), Communities Finance Company, LLC ("CFC"), Financial Resources Group, Inc. and Financial Resources Group, Inc. d/b/a WCI Mortgage (Collectively, "FRG"), First Fidelity Title, Inc. ("FFT"), WCI Realty, Inc. ("WCI Realty"), Watermark Realty Referral, Inc. ("Referral"), Watermark Realty, Inc. d/b/a Prudential Florida WCI Realty ("Realty"), WCI Communities Property Management, Inc. ("PM"), and Florida Lifestyle Management Co. ("FLM"). The nature of this business relationship is that (i) FRG, FFT, Realty, and FLM are wholly-owned subsidiaries of WCI, and (ii) WCI Realty, PM, JYC, Sarasota, CFC, and Referral are wholly-owned subsidiaries of BCG, which is a wholly-owned subsidiary of WCI. Because of these relationships, any referral may provide WCI, BCG, JYC, Sarasota, CFC, PRG, FFT, WCI Realty, Referral, Realty, PM, and/or FLM a financial or other benefit.

Set forth below is the estimated charge or range of charges for the various settlement services that may be provided by FFT, FRG, WCI Realty, Referral, and/or Realty, or for services provided by unaffiliated third parties in connection with the services provided these companies. You are NOT required to use the listed provider(s) as a condition for the purchase, sale or refinance of the subject property. **THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

**A. Set forth below is the estimated charge or range of charges by FFT for the settlement services listed:**

| Settlement Service | Charge or Range of Charges (depending on the County in which the Residence is located) [1] |
|---|---|
| Owner's title insurance policy | Minimum rate promulgated by the Florida Department of Insurance |
| Simultaneously-issued mortgagee's title insurance premium paid to insurer | $25 |
| FFT fee for services in connection with issuance of mortgagee's title insurance policy | $25 - $275 |
| Title search | $25 - $150 |
| Title examination | $100 - $150 |
| Settlement charge | $100 - $250 |
| Endorsements to owner's title insurance policy and/or mortgagee's title insurance policy | $30.00 to 10% of minimum promulgated rate [2] |
| Document Delivery Fees | $5.00 - $40.00 [3] |

(1)   As specified in the relevant purchase contract with Seller, if Purchaser selects FFT as the title company in the transaction, and/or if the purchase transaction is to be financed and Purchaser selects FRG for the purpose of obtaining mortgage financing, Seller may provide a credit to the Purchaser for a portion of these costs.

(2)   Charge for endorsement includes FFT's fee for services in connection with issuance of endorsement.

(3)   Charge per document delivery related to delivering documents to (a) lenders financing the subject transaction and/or (b) purchasers or purchaser's representative, as the case may be, for closing by mail.

B. Set forth below is the estimated charge or range of charges typically incurred for the settlement services listed in connection with a mortgage loan obtained through FRG, including charges that are made by and paid to third parties. In addition, at the time of loan application, FRG requires an application deposit of $350 (to cover the costs of the appraisal and credit report) that will be credited towards the Borrower's payment due at closing. **Funding lenders on whose behalf FRG originates loans impose certain other charges in connection with their loans and estimates of such charges will be provided by FRG.**

| Settlement Service | Charge or Range of Charges |
|---|---|
| Administrative fee to FRG | $250 - $350 |
| Document preparation fee to FRG (where FRG prepares the documents) | $250 - $350 |
| Loan origination fee to FRG | Maximum of 3% of loan amount, depending on compensation received by FRG from the funding lender in connection with loan origination [4] |
| Appraisal | $275 - $700 |
| Courier services | $6 - $40 |
| Credit report | $15 - $110 |
| Document preparation (where funding lender prepares the documents) | $125 - $395 |
| Final inspection (does not apply to sale of a lot only) | $50 - $150 |
| Flood certification report (does not apply to sale of a lot only) | $8.75 - $25 |
| Tax service | $60 - $135 |
| Underwriting Fee | $100 |

(4) Such compensation may vary depending on the funding lender and interest rate.

C. In connection with providing real estate brokerage services, Referral, WCI Realty and/or Realty may receive a commission or a cooperative brokerage referral fee for a referral to another real estate brokerage company (which is typical in the real estate brokerage industry); however, this will not affect the amount you pay to purchase or sell a property. Set forth below is the estimated charge by Realty for administrative services (including but not limited to costs of labor and copying) that may be provided by Realty.

| Settlement Service | Charge |
|---|---|
| Processing and handling fee | $195 |

ACKNOWLEDGMENT

I/we have read this disclosure form, and understand that Seller or one of its affiliates identified in the second paragraph of this Notice is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

(Purchaser) _____     (Purchaser) Do/phin LLC

Date: _____     Date: PARTNER

JOHN CHERIN
8/3/04

JS 44 (Rev. 11/05)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)  **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| DOLPHIN, LLC, a Florida Limited Liability Company | WCI COMMUNITIES, INC., a Delaware Corporation |

**(b)** County of Residence of First Listed Plaintiff  Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

RYAN & RYAN ATTORNEYS, P. A.
631 U.S. HIGHWAY ONE, SUITE 100
NORTH PALM BEACH, FL 33408
(561) 841-3420

07-80241

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

07CV 80241 DTKH/JMH

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):
a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO
JUDGE                 DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Sections 1701-20
Violation of Interstate Land Sales Full Disclosure Act
LENGTH OF TRIAL via 4 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  March 13, 2007

FOR OFFICE USE ONLY

AMOUNT 350   RECEIPT #   IFP

722540